CHATHAM SHIPPING COMPANY, Warwick Corporation and Tsakalotos Navigation Corp., Libelants-Appellees,

v.

FERTEX STEAMSHIP CORPORATION, Respondent-Appellant.

No. 23, Docket 29671.

United States Court of Appeals Second Circuit.

Argued Sept. 30, 1965.

Decided Oct. 19, 1965.

John J. Foley, New York City (Foley & Grainger, New York City), Robert P. Whelan, New York City, of counsel, for respondent-appellant.

Theodore P. Daly (Poles, Tublin & Patestides, New York City) (Christ Stratakis, New York City, of counsel), for petitioners-appellees.

Before FRIENDLY and KAUFMAN, Circuit Judges, and HERLANDS, District Judge.*

FRIENDLY, Circuit Judge.

On June 19, 1964, appellant Fertex Steamship Corporation entered into a charter, in New York City, with Tsakalotos Navigation Corporation "as Agents for Owners of the Liberian steamer 'Athenoula T.,' Owners' option substitute, of $\frac{7227}{4442}$ tons $\frac{gross}{net}$ Register," for the carriage of a cargo of phosphate from Tampa, Florida, to Cartagena, Colombia. The charter provided that "should any dispute arise between Owners and the Charterers," the matter should be referred to arbitration in New York by three commercial men. The owner of the Athenoula T, Warwick Corporation, designated a Greek steamer, the General Tsakalotos, to perform the charter. After delivery of the cargo and partial payment of the freight, a dispute arose as to non-payment of the

---

* Of the Southern District of New York, sitting by designation.

balance, damage to the vessel, and other matters.

There ensued, in the District Court for the Southern District of New York, a Pickwickian series of moves that has already accumulated more than two printed pages of docket entries without any approach to the merits. It began, in December 1964, with the filing of a libel by Tsakalotos Navigation Corporation, the agent, seeking damages against Fertex. The latter excepted on the ground that Tsakalotos Navigation was not the real party in interest. Thereupon a second libel was filed in which the agent was joined by Warwick Corporation, owner of the Athenoula T, and Chatham Shipping Company, owner of the General Tsakalotos. This libel invoked the arbitration clause in the charter, and stated "that by this action the libelants seek to compel the respondent to submit to arbitration and demands [sic] security to insure payment and satisfaction of an arbitration award, pursuant to 9 U.S.C. § 8." Tsakalotos Navigation Corporation then made a motion to have the first libel dismissed without prejudice, which Judge Metzner granted. Later the agent and the two shipowners served a petition which generally repeated the allegations of the second libel, asserted that they had appointed an arbitrator but that Fertex had declined to do so, and asked that judgment be entered unless Fertex proceeded to arbitration. Fertex excepted to the second libel and opposed the petition on the ground that by the first libel, filed by Tsakalotos Navigation, all three libelants had waived their right to arbitration. Apparently Fertex also argued that libelants had improperly relied on § 8 of the Arbitration Act, which indeed was not here applicable, whereas they should have filed a petition under § 4. Properly seeking to cut through the paper maze created by the rather bumbling efforts of petitioners' proctors and to place petitioners where they desired and deserved to be, Judge Metzner, on March 2, 1965, dismissed the second libel but granted the motion to direct Fertex to proceed with arbitration as properly made under § 4 of the Federal Arbitration Act.

On March 15, 1965, Fertex filed a notice of appeal from Judge Metzner's order. Some days later it submitted in the District Court an order to show cause why it should not be granted a variety of relief, including reargument on the allegedly new discovery of what it was later to characterize as "the startling fact, previously obscured by procedural movements, that Fertex Steamship Corporation has never agreed to arbitrate any disputes under the charter party, with Chatham Shipping Company, the owner of the 'General Tsakalotos.'" Judge Metzner, pointing out that reargument had not been sought within the ten-day limit provided by General Rule 9(m) of the District Court, denied the motion save insofar as it sought to stay arbitration pending this appeal.

■ Fertex's points on appeal are wholly devoid of merit. The cases are altogether clear that the mere filing of an action for damages on a contract does not preclude a subsequent change of mind in favor of arbitration therein provided, see Richard Nathan Corp. v. Dacon-Zadeh, 101 F.Supp. 428, 430 (S. D.N.Y.1951); Farr & Co. v. Cia. Intercontinental de Navegacion, 243 F.2d 342, 348 (2 Cir. 1957); the earliest point at which such preclusion may be found is when the other party files an answer on the merits. The Belize, 25 F.Supp. 663, 664 (S.D.N.Y.1938); Cavac Compania Anomina Venezolana de Administracion y Comercio v. Board for Validation, 189 F.Supp. 205, 209 (S.D.N.Y.1960). Judge Metzner was quite warranted in rejecting as untimely Fertex's belated claim concerning the substitution of a vessel owned by Chatham. It was baseless in any event. Even if the bare words "owners' option substitute" are not enough to overcome the general principle that a voyage charter must be performed by the shipowner identified in the charter party, see Fratelli Sorrentino v. Buerger, [1915] 3 K.B. 367; Scrutton, Charterparties and Bills of Lading, at 3, n. 2

(17th ed. 1964), a point we find it unnecessary to decide, Fertex waived any right to object to the substitution by accepting performance by the General Tsakalotos, see Denton v. Brocksmith, 299 F. 559 (5 Cir. 1924); 3 Williston, Contracts § 418, at 102 (3d ed. 1960). And if we accept Fertex's contention that a novation did not occur, the substitution and acceptance of Chatham's vessel amounted at least to an assignment of Warwick's rights to performance by Fertex. Chatham was thereby entitled to enforce the arbitration provision in the charter, since it is established that, absent contrary expression, assignment of a contract carries with it a right to arbitration therein provided. See Fisser v. International Bank, 282 F.2d 231, 233–234, n. 6 (2 Cir. 1960); Application of Reconstruction Finance Corp., 106 F. Supp. 358, 360 (S.D.N.Y.1952); Instituto Cubano De Estabilizacion Del Azucar v. The MV Driller, 148 F.Supp. 739, 740 (S.D.N.Y.1959); 4 Corbin, Contracts § 892, at 587 (1951). Moreover, apart from Chatham's right as assignee, here Warwick also is seeking arbitration. Fertex's contention thus reduces itself to the absurd conclusion that the substitution of Chatham's vessel not only failed to pass the right to arbitrate to the assignee but also destroyed the right of the assignor.

■ In view of the frivolous nature of Fertex's objections, we would have affirmed from the bench had we not wished to give further consideration to appellees' argument that the order should be held not to constitute a "final" decision appealable under 28 U.S.C. § 1291. The suggestion has strong practical attraction in this not atypical instance of an unworthy effort to escape or delay arbitration, whether voluntarily accepted or, as here, dictated by the custom of the trade, see Gilmore & Black, Admiralty 173 (1957)—particularly since, if such orders are deemed interlocutory, 28 U.S.C. § 1292(b) would now permit review in a truly meritorious case. If the slate were clean, a good deal might be said for the position that even though an order directing arbitration seems "final" in the formal sense that it is the last thing the court is then being asked to direct, it should be realistically viewed as an intermediate step in a proceeding that will not result in a truly final decision until an award has been rendered by the arbitrators and an order has been made to enforce it. See the remarks of Judge Clark on a related problem in Stathatos v. Arnold Bernstein S.S. Corp., 202 F.2d 525, 527–528 (2 Cir. 1953). However, the rule in this court, established after full consideration, is that although an order directing arbitration is interlocutory when made in the course of continuing litigation, it is considered a final decision when handed down in an independent proceeding under § 4 of the Arbitration Act. Farr & Co. v. Cia. Intercontinental de Navegacion, 243 F.2d 342 (2 Cir. 1957); Intercontinental Transportation Co. v. States Marine Lines, Inc., 297 F.2d 249 (2 Cir. 1961). The Farr decision is not without logical support and is in line with the general current of authority. See 243 F.2d at 345, n. 3, and Judge Maris' opinion in Rogers v. Schering Corp., 262 F.2d 180 (3 Cir.), cert. denied, 359 U.S. 991, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959). Moreover, the Supreme Court has held that an order directing arbitration under § 301(a) of the Taft-Hartley Act is appealable as a final judgment, Goodall-Sanford, Inc. v. United Textile Workers, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1953), and although the opinion disclaimed passing on the related question under the Arbitration Act, we perceive no really tenable ground for distinction. Arguments that the aim of arbitration statutes would be better effectuated if such orders were not appealable must therefore be addressed to Congress.

■ This does not mean, however, that appellate courts must sit by, while wholly unmeritorious appeals frustrate the purpose of arbitration clauses to provide a speedy and economical solution of business or labor disputes. Appellees are entitled to move promptly to

dismiss such appeals as frivolous, a procedure which, because the relevant facts are often so few, should frequently be practicable even in advance of the filing of the record by the appellant. See our Rule 11(c). Although motions to dismiss as frivolous are not favored by this court where disposition requires examination of a trial transcript, better done with the aid of briefs, this is generally not the situation in appeals from orders directing arbitration.

The order is affirmed; the mandate will issue forthwith.